This case up this afternoon, it's 416-0138, People v. Billy J. Stevens for the felon. Gavin Dow, you are he, sir? Is that pronounced correctly? Dow, yes, sir. And for the appellee is John Zimmerman. First, I want to mention, we asked you people to get here early in case that we could start early, and you are both here early, so thank you, because here we are, and we'll start a half hour early. So, without further ado, Mr. Dow, you may proceed. Thank you. Good afternoon. May it please the Court. Counsel. The State has conceded that there were three errors that occurred at trial. The first error is that the trial court failed to follow Rule 431B. The State has also conceded that the trial court was required to give IPI 11.66 and did not. And the State has conceded that it improperly elicited evidence, direct examination of a police officer and cross-examination of the defendant, Mr. Stevens, concerning whether Mr. Stevens could explain why his daughter would lie about him. These errors are not preserved, so the question is whether or not they are viewable as a plain error. And specifically... You know, I'm reminded of Casey Stangl, when he was the manager of the New York Mets, terrible team in 1982. His question as they kept on losing game after game was, don't nobody here know how to play this game? Is there anybody in this trial who knew what the rules were or how to try a lawsuit? I have to imagine that yes, there were some errors, but I wouldn't say that no one knew how to do it. Well, okay. You're very generous. Observation, go ahead. Thank you, Your Honor. As I was saying, these errors are reviewable as plain error under the closely balanced evidence of wrong. The controlling cases here are People v. Seve and People v. Naylor. Essentially, Seve and Naylor say this. By definition, a case is closely balanced if it has three features. One, the State and the defense present opposing versions of events. Two, no extrinsic evidence corroborates either side. And three, neither version of events is inherently implausible. That is the case here. Mr. Stevens and his daughter testified to opposing versions of events. There was no extrinsic evidence introduced to corroborate either one of those persons' testimony. And Stevens' testimony was not inherently implausible. What this means is that this case came down to a credibility call. There was no other basis on which the jury could return a verdict other than credibility. And when that's the case, under Naylor, that means the evidence was closely balanced. Now, if the Court were to get beyond this, or if the Court wanted to discuss some of the Casey-Stengel issues, briefly, with regard to IAPI 3.01, that's an instruction that is meant to be used when there is a charge of one date, but the evidence at trial shows something different than that date. So, in other words, a robbery is alleged to have occurred on July 1st. The evidence shows that it occurred on June 30th. That is not this case. In this case, the information alleged that the charged incident had taken place sometime in November or December of 2014. The evidence at trial showed that that incident, which was the last incident, took place at Stevens' mother's home. According to MS, it was close to the end of winter. According to her statement earlier to the Child and Children's Advocacy Center, she placed it between Thanksgiving and Christmas. So, in other words, November and December. And even Mr. Stevens testified at trial that his daughter spent the night with him at his mother's home after he moved there in November of 2014. So, there's not a variance. What we have is a charge of November or December 2014. And what we have is evidence showing November or December 2014. Here's why IPI 3.01 is problematic. It says, the information states that the offense charge was committed on or about November 2014 through December 2014. If you find the offense charge was committed, the state is not required to prove that it was committed on the particular date charged. The effect of that instruction is to inform the jury, you don't have to just consider this time frame. You can consider everything outside of that time frame. And that leads to a risk that the jury would improperly convict based on the other crimes evidence that was introduced in this case. But realistically, counsel, the only crimes that they talked about with any degree of specificity were those committed in either that November or December time frame, wasn't it? I would agree with you, Your Honor, that that's the only ones that were dated. There was evidence through both testimony and through MS's statement to the forensic interviewer about a variety of incidents that had occurred in the past. None of which had the specificity that was testified to with regard to the November-December incident. Once again, I think I would agree, but I also think it's close. I think the most that they got into, wasn't it, that on occasion if she and her mother got into it or she was upset about something, her father would come upstairs and initially start out consoling her and then would ultimately molest her. Right, but there was more information than that about some of the charged incidents. For example, MS told the forensic interviewer about an incident that had taken place at her other grandmother's home sometime before the charged incident. So that one was specifically placed and in fact, to the forensic interviewer, she said that was the last time that Mr. Stevens had used his private part. Which created an inconsistency between her trial testimony and her prior statement that actually went to one of the two counts of indictment or the information. Yeah, but as far as the use of 3.01, the only crimes that everyone focused on, that they spent the most time on, that they talked about in great detail were those November-December time frame incidents, correct? I'm not, because as I understand your argument, the jury would disregard all of this very specific evidence about this specific time frame in November-December and somehow, because of 3.01, they would somehow pick one of these other unspecified, non-detailed, referenced in general terms only, incidents on some other date, some other time, and some other place. I think, Your Honor, the reason I'm having difficulty answering your question is that there was some specific information about the charged incident, but there wasn't very much. We had when it took place. I agree with you there. Right, so there wasn't very much, and so the evidence was, by and large, general in nature, although I would agree, Your Honor, that there was some information about the when and the where of the charged incident. The party's closing arguments were not so specific. They were much more general. Do you believe MS? Do you believe the defendant? And so this isn't a situation where you had significant testimony about any particular incident. You had some pieces of information about the charged incident, and then you had more testimony about the overall course of conduct. And under those circumstances, when the jury is told it doesn't have to hold the state to its burden of proving that the charged incident took place, that it can find him guilty based on incidents outside of the charged time frame, that creates a risk that Mr. Stevens would be improperly convicted on an uncharged offense. Right, I'm sorry. Is there no further questions? Thank you. Thank you. Mr. Zimmerman? May it please the Court? Counsel. Counsel. Good afternoon, Your Honors. My name is John Zimmerman from the Fourth District Appellate Prosecutor's Office. Here on behalf of the state, the state does concede three issues which counsel previously mentioned. As a result, if this Court finds the evidence was closely balanced, then the state concedes pursuant to SEBI that it must be reversed and remanded. However, the state's position is that the evidence was not closely balanced. In determining whether the evidence was closely balanced, as Your Honors are aware, a reviewing court must evaluate the totality of the evidence and conduct a qualitative common sense assessment of it within the context of that case. Contrary to defendants' assertions that a credibility contest automatically results in closely balanced evidence, our Supreme Court in Naylor rejected that statement and stated, it is axiomatic that whether the evidence in a criminal trial is closely balanced depends solely on the evidence adduced in that particular case. Now, here the only issue is whether defendant father committed the penetration alleged in the two counts. The evidence was the victim's testimony explicitly describing the sexual assaults. Mrs. Schuller, the victim's social worker, school social worker, testified that the victim also told her that her father sexually abused her. Mary Bunyard, the Child Advocacy Center's forensic expert, similarly testified that the victim stated the defendant molested her. The evidence in this case described the events in detail, how and when they occurred. Officer Johnson also testified about his confrontation with defendant father and about the allegations. The defendant in this conversation wavered. He at one time said he would never enter the victim's room. Other times he said he would enter her room. And there were additional inconsistencies with his statement.  Except the defendant ultimately denied the final acts of abuse. The defendant's testimony at trial further corroborated this timeline of events, and the testimony showed he even slept in the same bedroom as the victim. When using a qualitative common sense analysis of this evidence, it clearly shows that it was not closely balanced. The victim was consistent and credible with her testimony and her accusations throughout the pretrial and trial period. She was extremely consistent. Defendant's testimony, however, was less credible. There was prior convictions introduced that he was a convicted felon, although this was driving on a revoked license. He also had a conviction for theft, which the state posits that that is somewhat of a dishonest crime. The jury could use that as evidence attacking his credibility. Moreover, as I previously stated, he contradicted himself several times with his interview with Officer Johnson. As a result, although this was a contest of credibility, the contest was not a balanced one. Thus, the evidence was not closely balanced, pursuant to the standards set forth in SEBI. It must have been pretty closely balanced. It was a hung jury the first time, wasn't it? That is correct, Your Honor. However, that is not the state's position in this case. Because really, this boils down to statements. It's her statement against his. True. That is correct, Your Honor. There's no physical evidence corroborated. There's no expert witness testifying about the child's behavior or anything consistent with children who are victims of sexual assault. Nothing. That is just it. I mean, this is pretty much the classic he said, she said. Yes. And if you take that further, most cases of criminal sexual assault or sexual assault children do come down to he said, she said. Based off some of the cases I've had, that's normally the case. And simply, if there's one sole error, that shouldn't be sufficient to just require a reversal. That's why in this case, although it is a he said, she said, there's consistency throughout her statements. She did not say one thing in a pretrial interview and then say something differently at trial. Although there was a discrepancy with the dates. This is a young girl. She was molested multiple times throughout the span of years. So within the context of the whole case, she was consistent and credible. And the jury was aware of that. And for these reasons, the state's position is that it was not closely balanced. Now, defendant also makes arguments under second prong plain error. The state's position is that neither of these arguments amount to second prong plain error. This would be the jury instructions, as well as the alleged pervasive prosecutorial misconduct. The jury instructions, this would be IPI 11.66, as well as IPI 3.01. Both of these instructions, when they're not given or are given, have been deemed to be harmless error. And our second district has held that an error that can be deemed harmless cannot also amount to an error. Fundamental, it rises to the level of second prong plain error. Moreover, it's defense counsel's responsibility to tender his own jury instructions. And if he fails to do so, that issue should be considered way upon appeal. Additionally, the trial court is not required to sui sponte issue these instructions. As a result, the defendant has failed to show second prong plain error in regards to the jury instructions and the alleged prosecutorial misconduct. As the state concedes one error did occur, however, the others, the state posits, were not errors. This does not evidence a pattern of intentional prosecutorial misconduct. And as a result, this did not give rise to second prong plain error. Defense counsel also made some error and argument regarding the ineffective assistance of counsel. However, the state posits that where defendant fails to establish plain error, the defendant has failed to persuade he suffered prejudice from the complaint of errors and is therefore precluded from claiming ineffective assistance of counsel. Accordingly, plain error analysis does not apply and defendant received a fair trial. And the state requests this court to affirm the trial court's judgment. There's no further questions. The state will rest. Okay. Thank you, counsel. Mr. Bowne, are you rebuttal, sir? Yes, sir. Okay. With respect to the closely balanced evidence arguments, most of our responses to those are to be found in the reply brief. I'm not going to belabor them here. The point I want to make, though, is that the arguments in the state's brief and the reply brief a minute ago are all essentially jury arguments. They're arguments that are designed to persuade the prior fact. Well, but when we're called upon to evaluate whether the evidence is closely balanced in the plain error situation, don't we have to essentially consider these same kinds of arguments as if we were the jury? I would disagree with that, Your Honor. I don't think that... The assembly makes clear that if it's the evidence is closely balanced is the issue. And if it's closely balanced and there's plain error, then conviction should be reversed. We're evaluating a cold record. How should we go about doing it? But you should go about doing that by looking at the evidence objectively, in a common sense manner, et cetera, et cetera. But the point that I'm trying to make is that this court does not sit in the same place as the jury. You know, it's basic law that... The jury's got a lot better view than we do. Exactly. And the problem here is that when the jury made its credibility determination, it was doing so based on a few different errors. So we have a jury that wasn't properly instructed. We have a jury, we're not sure that they understood the state's burden or Mr. Stevens need to present evidence. And we have a jury who heard improper testimony about Mr. Stevens's inability to explain why his lawyer would lie. So... So we're supposed to evaluate the evidence absent those matters, deciding whether it's closely balanced. I don't think that that's what Sebi says. I think you do just look at the evidence that was adduced at trial, Your Honor. And that gets me to my next point, which is just... This is not just any credibility contest we have in this case. This is what you might call a pure credibility contest. And what I mean by that is you have one where you can't really look to anything outside to resolve it. The trier of fact has to make a judgment call ultimately. And it's that kind of pure credibility contest that is by definition closely balanced under Sebi and Naylor. Obviously, there are a lot of cases in this realm that involve that kind of evidence. And those cases are going to be closely balanced unless there's some sort of forensic evidence, expert testimony, or some other kind of objective corroboration. Finally, with respect to IPI 3.01, the state did not argue that it was forfeited. So it is reviewed for standard reversible error rather than for plain error. So the other matters that we have discussed, I would rest on my brief. And if the court has any further questions? Don't see any. All right. Thank you. Thank you, counsel. We'll take this matter under advisement as he reads us into our next piece. Mr. Zierman, a question that relates not to the case itself, but to the briefing. This is the second week in a row that I noted that Ms. Lagler was on the brief, but did not appear for oral argument. I want to inquire about that. Ms. Zierman, she's left her office, and so we are going in to her. Oh. Can we have files and proper notices? Sure, sure. Where'd she go? She went to federal district. To where? McLeod. I don't know. Is that the new federal district judge? I'm not sure. Okay. Thank you.